Rufus Belton, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 8, 1979, before Judges WILKINSON, JR., MENCER and DiSALLE, sitting as a panel of three.

*Terry Fromson,* with him *Rita L. Bernstein,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Gerald Gornish,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, June 20, 1979:

Rufus Belton (claimant) appeals an order of the Unemployment Compensation Board of Review (Board) denying him benefits because of willful misconduct pursuant to Section 402(e) of the Unemployment Compensation Law (Act), Act of December 5,

1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). We affirm.

Claimant was employed as a letter carrier by the United States Postal Service (employer) in Philadelphia for approximately 2½ years prior to his discharge. On November 11, 1976, while loading parcel post on his delivery truck, claimant asked his supervisor, Mr. Circilo, for a handtruck. Mr. Circilo informed claimant that none was available but he suggested claimant use a four-wheeled hamper. Claimant declined the use of the hamper because it would not fit into the truck with the packages. Mr. Circilo made room for the hamper by rearranging the packages and then ordered claimant to put the hamper into the truck. Claimant again refused, claiming he could not, by himself, lift the hamper through the side of the truck and that to do so would be a safety hazard as he might fall on the slippery garage floor. Mr. Circilo repeated his order and claimant refused a third time to comply. Consequently, claimant, having a prior 14-day suspension on his record for refusing to follow a supervisor's instructions, was discharged for insubordination.

Both the Bureau and the referee denied claimant's application for benefits, based on Section 402(e) of the Act, and were affirmed by the Board. Claimant's appeal to this Court followed.

At the hearing before the referee, the employer was represented by Mr. Hagens, a personnel assistant, who had no personal knowledge of the events leading to claimant's discharge and, while testifying, merely referred to the disciplinary documents compiled by the employer. Claimant's counsel objected to Mr. Hagens' testimony as hearsay and argues here that the testimony must be stricken on the basis of our decision in *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367

A.2d 366 (1976). In *Walker*, we stated that hearsay evidence, properly objected to, is not competent evidence to support a finding of the Board. Since Mr. Hagens' testimony was clearly hearsay, *see Harrison v. Unemployment Compensation Board of Review*, 34 Pa. Commonwealth Ct. 364, 383 A.2d 965 (1978), and was properly objected to, it cannot support the Board's findings of willful misconduct.

Our conclusion, however, does not result in a reversal of the Board's decision, as claimant's own testimony supports the Board's findings on the events leading to his discharge and his prior disciplinary suspension. *See Turner v. Unemployment Compensation Board of Review*, 33 Pa. Commonwealth Ct. 195, 381 A.2d 223 (1978). Therefore, the only issue remaining is whether claimant's conduct in refusing an order of his supervisor amounts to a disregard of the standards of behavior an employer has the right to expect of an employee.

Generally, an employee's repeated direct refusals to perform a duty assigned or follow instructions constitutes willful misconduct. *Russell v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 499, 387 A.2d 1364 (1978); *Unemployment Compensation Board of Review v. Homsher*, 21 Pa. Commonwealth Ct. 576, 347 A.2d 340 (1975). In analyzing a claimant's refusal, however, we must examine all the circumstances, including the reasonableness of the employer's request and claimant's reason for noncompliance. *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 383 A.2d 533 (1978); *Hayes v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 49, 387 A.2d 186 (1978). Here the reasonableness of the employer's request is apparent, *i.e.*, to allow for the more efficient delivery of the mail. Claimant attempts to justify his refusal, however, by claiming that it was hazardous

to lift the hamper off the loading dock and place it into the side of the truck because of the weight of the hamper[1] and because the garage floor was allegedly slippery with oil and refuse. While a threat to an employee's safety can constitute good cause for refusing an employer's request, see McLean, supra, claimant's testimony failed to establish such a threat, since claimant admitted that there was an alternative method of loading the hamper which eliminated the alleged safety hazard. Claimant testified that, when he had used hampers in the past to deliver the mail, he simply rolled the hamper onto the back of the truck directly from the loading dock, thereby avoiding either lifting the hamper or slipping on the garage floor. When questioned why he did not do so again, claimant stated the back of the truck was blocked by packages. Asked why he could not rearrange the packages, claimant stated that to do so would block his rearview mirror, another safety hazard. We need not state the obvious, however, that one does not use a rearview mirror to load a truck and that once loaded it is a simple matter to again rearrange the packages to allow the use of the rearview mirror. In short, when we view claimant's excuse in light of all the circumstances as established by his own testimony, we find it to be frivolous. Thus, we enter the following

ORDER

AND NOW, this 20th day of June, 1979, the order of the Unemployment Compensation Board of Review, dated July 15, 1977, denying Rufus Belton benefits, is hereby affirmed.

---

[1] The Board found that the hamper in question weighed no more than 25 pounds, an amount, according to claimant's testimony, that is at least 10 pounds below the weight a letter carrier is expected to lift.