# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald G. Jackman, Jr., :  
              Petitioner :  
  : No. 1093 C.D. 2023
              v. :  
  : Submitted: September 9, 2024
Unemployment Compensation :  
Board of Review, :  
              Respondent :  

BEFORE:   HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                      **FILED: October 22, 2024**

        Donald G. Jackman, Jr. (Claimant), appearing *pro se*, has petitioned this Court to review the adjudication of the Unemployment Compensation Board of Review (Board), which affirmed the decision of the referee that Claimant was ineligible for unemployment compensation benefits because Claimant committed willful misconduct under Section 402(e) of the Unemployment Compensation Law (UC Law).[1] After careful consideration, we conclude that Claimant's failure to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the UC Law provides that an employee is ineligible for compensation for any week that her unemployment is the result of her discharge from work due to willful misconduct.

comply with R & N Manufacturing's (Employer) COVID-19 mask policy constituted willful misconduct. Accordingly, we affirm.

## I. BACKGROUND[2]

Claimant began working for Employer on April 10, 2019. In response to the COVID-19 pandemic, Employer implemented a policy, effective October 7, 2021, which required employees to be vaccinated or wear a mask while at work. Claimant returned from a leave of absence on that same day; he was informed of the policy and provided a mask. Nevertheless, throughout the day, Claimant failed to comply with the mask policy. Despite repeated warnings from his supervisor, Claimant stated that he would neither wear a mask nor be vaccinated. Claimant was sent home and thereafter discharged for failing to comply with Employer's COVID-19 policy.

Claimant promptly applied for UC benefits, but the UC Service Center denied benefits for willful misconduct under Section 402(e) of the UC Law. Claimant timely appealed, and a hearing was held before a referee.[3] The referee upheld the denial of benefits, and Claimant sought further review before the Board. The Board affirmed, finding that Claimant's repeated failure to wear a mask and statement that he was never going to wear a mask constituted willful misconduct. Claimant appealed to this Court.

## II. ISSUES

---

[2] Unless stated otherwise, we adopt the factual background for this case from the Board's decision, which is supported by substantial evidence of record. *See* Bd.'s Dec., 7/19/23.

[3] Claimant testified and was represented by counsel at the hearing. Phillip Ostrowski appeared on behalf of Employer. It is clear from the testimony that Mr. Ostrowski is employed by Employer in a supervisory capacity, but his position is never identified.

Claimant asserts that Employer failed to meet its burden to establish that Claimant engaged in willful misconduct. Specifically, Claimant contends that he was not informed of the COVID-19 policy prior to his termination and that the policy was unreasonable. *See* Pet'r's Br. at 2-4. Additionally, Claimant asserts that he had good cause for not complying with the policy. *See id.* at 2-3.

In response, the Board argues that its conclusion that Claimant deliberately violated Employer's reasonable policy without good cause was supported by substantial evidence. Bd.'s Am. Br. at 6.

## III. DISCUSSION[4]

### A. Employer Established Willful Misconduct

Claimant first asserts that Employer failed to establish his willful misconduct because he was not informed of the COVID-19 mask policy prior to his termination and the policy was unreasonable. *See* Pet'r's Br. at 2-4. This claim is without merit.

Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of behavioral standards that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations. *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 (Pa. Cmwlth. 2022). "When asserting that a discharge was based on a violation of a work rule, an employer must establish the

---

[4] On appeal, our review is limited to "determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 n.4 (Pa. Cmwlth. 2022). Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a finding. *Id.* at 136.

3

existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation." *Id.* at 136; *see id.* ("An employee who has no notice of a work rule will not be denied benefits based on willful misconduct.").

"In determining reasonableness, this Court should consider whether application of the rule or policy under the circumstances is fair and just and appropriate to accomplish a legitimate interest of the employer." *Spirnak v. Unemployment Comp. Bd. of Rev.*, 557 A.2d 451, 453 (Pa. Cmwlth. 1989); *see also, e.g.*, *Brown v. Unemployment Comp. Bd. of Rev.*, 276 A.3d 322, 328-29 (Pa. Cmwlth. 2022) (finding employer's flu vaccine policy fair and just where it allowed medical or religious exemptions but rejecting a form document submitted by the claimant asserting the claimant's right to not give consent); *Bowen v. Unemployment Comp. Bd. of Rev.*, 311 A.3d 641, 646 (Pa. Cmwlth. 2024) (finding a federal subcontractor's COVID-19 vaccine policy fair and just where it allowed medical or religious exemptions but rejecting the claimant's subjective beliefs about the efficacy and safety of the vaccine); *Rivera v. Unemployment Comp. Bd. of Rev.*, 310 A.3d 348, 354 (Pa. Cmwlth. 2024) (noting an employer's "legitimate interest in protecting . . . the health and safety of its employees"). Also, "[a]n employee who fails to comply with an employer's reasonable change or modification to the terms of employment risks being ineligible for unemployment compensation." *Bowen*, 311 A.3d at 646 (citations omitted).

In this case, Claimant clearly had knowledge of Employer's COVID-19 policy. Claimant testified that he was told that he was required to wear a mask only minutes before he was told to go home. Hr'g Tr., 8/9/22, at 9. However, Mr. Ostrowski testified that Claimant was informed of the mask policy and provided a mask at the beginning of Claimant's shift. *Id.* at 5-6. Also, throughout the day Mr.

Ostrowski reminded Claimant that he was required to wear a mask or get a vaccine. *Id.* The Board credited Mr. Ostrowski's testimony. *See* Bd. Dec., 7/19/23, at 1-2. Further, the Board concluded that Claimant was aware of the policy because Claimant expressed that he would not wear a mask to comply with the policy. *See id.* at 2. Therefore, the Board's conclusion that Claimant was aware of the policy is supported by substantial evidence. *Pierce-Boyce*, 289 A.3d at 136.

Next, Claimant asserts that Employer's COVID-19 policy was unreasonable. In *Bowen*, we held that a federal subcontractor's COVID-19 vaccine policy was reasonable and appropriate to accomplish a legitimate interest. *Bowen*, 311 A.3d at 646. The vaccine policy required all employees to receive a COVID-19 vaccine unless they were granted a religious or medical exemption. *Id.* Further, the vaccine policy was implemented to comply with the vaccine mandate applicable to federal contractors and as a response to the COVID-19 pandemic. *Id.* Accordingly, the employer established that its vaccine policy was reasonable. *Id.*

Similarly, here, Employer implemented its COVID-19 policy in response to recommendations issued by the governor and the Centers for Disease Control and Prevention. Hr's Tr., 8/9/22, at 5. Employees were given the option of either getting a vaccine or wearing a mask. *Id.* Of course, Employer adopted this policy in response to the unprecedented COVID-19 pandemic, and it is simply beyond question that an employer has a legitimate interest in protecting the health and safety of its employees. Based on this evidence, we agree with the Board's conclusion that Employer's COVID-19 policy was reasonable. *Rivera*; *Bowen*; *Brown*; *Spirnak*.

**B. Claimant Failed to Establish Good Cause**

5

Claimant contends that he had good cause to violate Employer's policy because the policy threatened Claimant's safety. *See* Pet'r's Br. at 2-3 (citing *McLean v. Unemployment Comp. Bd. of Rev.*, 383 A.2d 533, 534 (Pa. 1978)). Specifically, Claimant asserts that receiving the vaccine posed a "serious risk to life [and] limb[]" and wearing a mask while operating machinery posed the risk of the mask getting caught in the machinery which would result in serious injury. *See id.* at 3.

Once it is established that a claimant has committed willful misconduct, the burden shifts to the claimant to prove that he had good cause for violating the employer's policy. *Woodring v. Unemployment Comp. Bd. of Rev.*, 284 A.3d 960, 964 (Pa. Cmwlth. 2022). Whether good cause existed for an employee's actions is evaluated considering all the attendant circumstances. *Rivera*, 310 A.3d at 354. "It is the claimant's burden of proof to show that his actions were justifiable or reasonable." *Id.*

An employee does not commit willful misconduct if her employer's directive directly threatens the employee's health or safety. *Dougherty v. Unemployment Comp. Bd. of Rev.*, 686 A.2d 53, 54 (Pa. Cmwlth. 1996). However, a claimant's subjective beliefs alone do not establish good cause for failing to comply with an employer's directive. *Id.* at 55.

In *McLean*, the employer's truck was returned from repairs still in substandard condition. 383 A.2d at 535. The employer asked the claimant to inspect the truck to determine which repairs were necessary. *Id.* After the claimant's inspection, the truck was returned to the garage for repairs. *Id.* The claimant again inspected the truck and found that it was still in substandard

6

condition. *Id.* The employer asked the claimant to drive the truck to determine its operability. *Id.* The claimant protested, but at the employer's insistence operated the truck. *Id.* After the truck's brakes failed on a mountain grade, the claimant informed the employer that the truck was unsafe for operation. *Id.* The employer told the claimant that the truck would be returned to the same garage for further repairs. *Id.* at 536. The claimant was discharged for refusing to drive the truck unless it was repaired by a different garage. *Id.*

This Court affirmed the Board's denial of benefits reasoning that the claimant had no way of knowing what condition the truck would be in after the repairs and the claimant substituted his own judgment for that of his employer. *Id.* However, our Supreme Court reversed, concluding that the claimant had good cause for refusing to drive the truck. *Id.* The claimant's safety concerns were not merely his own subjective beliefs. *Id.* at 536-37. The garage's repairs proved inadequate multiple times, and the employer was aware of this. *Id.* Additionally, the employer specifically asked the claimant for his judgment on the operability of the truck. *Id.* In sum, the claimant "justifiably refused to risk his life by relying on a repair shop which had already failed twice to put the truck in a safe condition." *Id.* at 537.

In our view, Claimant's reliance on *McLean* is misplaced. In that case, the safety concerns amounted to more than a claimant's subjective beliefs. On this point, the instant case is more analogous to *Tisak v. Unemployment Comp. Bd. of Rev.*, 424 A.2d 635 (Pa. Cmwlth. 1981). In *Tisak*, the claimant was discharged for failing to follow a direct order to park his truck at a specific area to be loaded. *Id.* at 636. The claimant asserted that he had good cause for not complying with the order because fumes from a nearby cherry picker were

7

detrimental to his health. *Id.* In affirming the Board's order denying the claimant's benefits, we held that the claimant's assertion that the fumes were detrimental to his health were unsubstantiated because the only evidence in support were the claimant's own statements. *Id.* at 637. Therefore, the claimant failed to meet his burden that he had good cause to disregard the employer's order. *Id.*

Similarly, here, Claimant's concerns that the mask would cause a safety concern by fogging up his goggles were unsubstantiated and supported only by his own statements. For example, Mr. Ostrowski pointed out that other employees were able to wear a mask successfully without their goggles fogging. *See* Hr'g Tr., 8/9/22, at 10. Thus, we conclude that Claimant lacked good cause to refuse to wear a mask while working.

Claimant's concerns regarding the efficacy and safety of the COVID-19 vaccines are also unpersuasive. This Court has previously rejected similar claims. *See, e.g., Bowen*, 311 A.3d at 647-48 (rejecting a claimant's subjective belief that the vaccine caused adverse side effects); *Rivera*, 310 A.3d at 354 (same). Claimant failed to support his concerns with evidence and, therefore, failed to establish that he had good cause for violating Employer's COVID-19 mask policy.

## IV. CONCLUSION

Here, following notice that Employer had adopted a policy in response to the COVID-19 pandemic that would require its employees to get vaccinated or wear a mask while at work, Claimant knowingly and repeatedly violated that policy and informed Employer that he would not comply with this reasonable policy. Moreover, Claimant failed to establish good cause for violating the policy, instead asserting unsubstantiated concerns rooted in his subjective

8

belief that wearing a mask while at work was dangerous. For these reasons, we agree that Claimant engaged in willful misconduct that supported Employer's dismissal of Claimant. Accordingly, the Board's decision is affirmed.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald G. Jackman, Jr., :
            Petitioner :
             : No. 1093 C.D. 2023
          v. :
             :
Unemployment Compensation :
Board of Review, :
            Respondent

# **O R D E R**

AND NOW, this 22nd day of October, 2024, the order of the Unemployment Compensation Board of Review, entered July 19, 2023, is AFFIRMED.

                                  _____

                                  **LORI A. DUMAS, Judge**